UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DARRELL E. BIGGERSTAFF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:16 CV 67 JMB |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM AND ORDER</u>[2]

Darrell E. Biggerstaff ("Plaintiff") appeals the decision of the Commissioner of Social

Security ("Defendant") denying his applications for disability insurance benefits ("DIB") and

supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act ("the

Act"), 42 U.S.C. §§ 401, *et seq.* Because Defendant's decision is supported by substantial

evidence and correctly applies the governing law, it is **AFFIRMED**. <u>See</u> 42 U.S.C. § 405(g).

## I.    <u>Factual Background</u>

At the time of his applications, Plaintiff was 48 years old. Plaintiff alleged disability due

to (1) narcolepsy, (2) "back and foot problems," and (3) depression. (Tr. 216, 266-67, 519)

According to Plaintiff, his narcolepsy problems began in "1996 or 1997" and became "really

bad" by 1999. (Tr. 266) Plaintiff alleges that his condition precludes his ability to work because

he sleeps up to 14 or 15 hours per day. (Tr. 51-53) The medical evidence before the Court

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to
Fed. R. Civ. P. 25(d), Ms. Berryhill should be substituted for Carolyn W. Colvin as the defendant
in this suit. No further action needs to be taken to continue this suit by reason of the last
sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] All matters are pending before the undersigned United States Magistrate Judge with
consent of the parties, pursuant to 28 U.S.C. § 636(c).

indicates that Plaintiff was periodically treated for narcolepsy from at least September of 2008, until the administrative hearing in this matter.[3] (See, e.g., Tr. 262, 351)  Until February of 2013, however, Plaintiff's symptoms were severe and apparently poorly controlled due to a lack of routine care.  (Tr. 315)  In March of 2013, Plaintiff began using Adderal.  As a result, Plaintiff's narcolepsy stabilized and his symptoms improved.  (Tr. 318, 320, 324)  By April 3, 2013, Plaintiff was "feeling better," and "sleeping less[]."  (Tr. 324)  Plaintiff was continued on Adderall, and instructed to "keep himself active and not [] sit for a long time or lie down during the day."  (Tr. 326)  At a follow-up visit in June of 2013, Plaintiff stated that his "symptoms are fairly controlled" with Adderall.  Plaintiff was "able to carry out activities," and had "no complaints."  (Tr. 332)  In August of 2013, Plaintiff was "stable on Adderall" (Tr. 341), and in November of 2013, Plaintiff remained "stable," and "deni[ed] any complaints" regarding his narcolepsy.  (Tr. 348)  Through at least February of 2014, Plaintiff's narcolepsy remained stable with Adderall.  (Tr. 351)

Plaintiff alleges that he sustained back and foot issues when he fell from a tree in approximately 1990.  (Tr. 267)  According to Plaintiff, he suffered compression fractures in his lower back "from LS to L5" as a result of the fall.  (Id.)  In the medical records, these injuries are diagnosed as "pain and dysfunction of [Plaintiff's] left ankle and foot."  (Tr. 268)  There are few medical records directly dealing with these musculoskeletal issues.  For instance, x-rays taken on January 8, 2013 show only a "small subchondral defect" which "may relate to [Plaintiff's] prior trauma," but there was "no evidence for acute fracture or dislocation."  (Tr. 279)  In November of 2012, Plaintiff's back issues were evaluated in connection with his disability application.  This evaluation found no evidence of lower extremity atrophy.  Plaintiff's gait was normal, and he

---

[3] The September, 2008 treatment notes appear to be the earliest records.  No treatment notes or medical records from the 1990s were included in the record before this Court.

was able to walk on toes and heels. Plaintiff's straight leg raising test produced an abnormal result, but the examiner questioned the validity of Plaintiff's response to this test because Plaintiff "writhed on the exam table complaining of severe back pain during the whole exam." (Tr. 268)

Plaintiff also complained of musculoskeletal issues resulting from a moped crash in June 2013. As a result of his moped accident, Plaintiff suffered a skull fracture, right rib fractures, right clavicle and scapular fractures, and a "floating shoulder." (Tr. 300) Plaintiff had surgery to address some of his injuries, and was released in stable condition. (Id.) By July 12, 2013, diagnostic imaging showed that Plaintiff was healing (Tr. 512), and by August 1, 2013, Plaintiff had substantially recovered. (Tr. 511) It appears that Plaintiff did not seek any further musculoskeletal treatment until at least February of 2014. (Tr. 315, 511)

As to Plaintiff's mental impairment allegations, Plaintiff was diagnosed with Major Depressive Disorder in January of 2013, by Dr. Karen A. MacDonald, Psy.D. (Tr. 517-19) In May 2013, Plaintiff was hospitalized for a few days due to suicidal thoughts. (Tr. 283) In June 2013, Plaintiff began treatment with psychiatrist Dr. Radhika Rao, M.D. Dr. Rao treated Plaintiff several additional times, each of which involved a 15-minute checkup, which appear to have been mostly for medication management. (See Tr. 377, 382, 387, and 392) These appointments appear to be the extent of Plaintiff's treatment for depression.[4]

## II.    **Procedural Background**

Plaintiff applied for DIB and SSI benefits on October 9, 2012, alleging a disability onset date of January 1, 2009. (Tr. 20, 216, 267) Plaintiff later amended his alleged onset date to November 26, 2012. For DIB purposes, Plaintiff's date last insured was December 31, 2012.

---

[4] The undersigned has reviewed the entire administrative record in this matter. Further discussion of pertinent medical evidence will be incorporated in the discussion below.

After Plaintiff's claims were initially denied (Tr. 91), he requested a hearing before an administrative law judge ("ALJ"). On June 11, 2014, Plaintiff appeared at the hearing (with counsel) to testify about his disability and functional limitations.[5] (Tr. 37-64) A vocational expert ("VE") also testified. (Tr. 64-70)

After receiving Plaintiff's testimony and evaluating the evidence submitted in the case, the ALJ issued a decision dated July 10, 2014, denying Plaintiff's application. (Tr. 20-30) Plaintiff sought review with the Appeals Council, which denied review on November 16, 2015. (Tr. 1-5) Having exhausted his administrative remedies, Plaintiff's complaint is now properly before this Court. See 42 U.S.C. § 405(g). Plaintiff alleges that the ALJ erred in failing to give good reasons for giving limited weight to the opinions of three medical sources, and for improperly discounting Plaintiff's credibility.

## III.   Standard of Review

"To be eligible for [disability] benefits, [Plaintiff] must prove that [he] is disabled …." Baker v. Sec'y of Health and Human Servs., 955 F.2d 552, 555 (8th Cir. 1992); see also Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A claimant will be found to have a disability "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial

_____

[5] The substance of this testimony will be discussed in connection with the Court's description of the ALJ's decision, *infra*.

gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A) and

1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

Per regulations promulgated by the Commissioner, the ALJ follows a five-step process in

determining whether a claimant is disabled.  "During the process the ALJ must determine: '1)

whether the claimant is currently employed; 2) whether the claimant is severely impaired; 3)

whether the impairment is, or is comparable to, a listed impairment; 4) whether the claimant can

perform past relevant work; and if not 5) whether the claimant can perform any other kind of

work.'"  Andrews v. Colvin, 791 F.3d 923, 928 (8th Cir. 2015) (quoting Hacker v. Barnhart, 459

F.3d 934, 936 (8th Cir. 2006)).  "If, at any point in the five-step process the claimant fails to

meet the criteria, the claimant is determined not to be disabled and the process ends."  Id.  (citing

Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005)); see also Martise v. Astrue, 641 F.3d 909,

921 (8th Cir. 2011).

The Eight Circuit has repeatedly emphasized that a district court's review of an ALJ's

disability determination is intended to be narrow and that courts should "defer heavily to the

findings and conclusions of the Social Security Administration."  Hurd v. Astrue, 621 F.3d 734,

738 (8th Cir. 2010) (quoting Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)).  The

ALJ's findings should be affirmed if they are supported by "substantial evidence" on the record

as a whole.  See Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008).  Substantial evidence is "less

than a preponderance, but enough that a reasonable mind might accept it as adequate to support a

decision."  Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008).

Despite this deferential stance, a district court's review must be "more than an

examination of the record for the existence of substantial evidence in support of the

Commissioner's decision."  Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998).  The district

court must "also take into account whatever in the record fairly detracts from that decision." Id. Specifically, in reviewing the Commissioner's decision, a district court is required to examine the entire administrative record and consider:

1. The credibility findings made by the ALJ;
2. Plaintiff's vocational factors;
3. The medical evidence from treating and consulting physicians;
4. Plaintiff's complaints regarding exertional and non-exertional activities and impairments;
5. Any corroboration by third parties of Plaintiff's impairments;
6. The testimony of vocational experts when required, including any hypothetical questions setting forth Plaintiff's impairments.

Stewart v. Sec'y of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992).

Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011). A decision does not fall outsize that zone simply because this Court might have reached a different conclusion had it been the original finder of fact. See also McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome.").

## IV. **ALJ's Decision**

In determining that Plaintiff was not disabled, the ALJ followed the five-step process for evaluating disability applications discussed above. See 20 C.F.R. § 404.1520(a). At step one, the ALJ found that Plaintiff was not engaged in substantial gainful activity. (Tr. 22) At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "narcolepsy; depression; and the residual effects of traumatic injuries." (Id.) At step three, the ALJ found that

Plaintiff's severe impairments do not meet or medically equal the severity of one of the listed impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 23) [6]

Next, the ALJ determined Plaintiff's residual functional capacity ("RFC").  After reviewing the relevant evidence of record, the ALJ found that Plaintiff had the RFC to perform:

> [medium work], except he cannot climb ladders, ropes, or scaffolds.  He must avoid hazards such as dangerous machinery and unprotected heights.  He cannot drive as part of his job.  He is capable of simple, routine tasks.  He can have only occasional interaction, defined as no more than one-third of the total workday, with coworkers and supervisors.  He is limited to occupations that can be performed in a non-public work setting where the individual would not be around members of the general public or required to communicate with them.

(Tr. 24)

In determining Plaintiff's RFC, the ALJ evaluated Plaintiff's credibility and the relevant medical opinion evidence.  As to Plaintiff's credibility, the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms [were] not entirely credible."  (Tr. 25)

Plaintiff alleged that he was unable to work because he "sleep[s] too much," and that even though medication has improved his narcolepsy, he still sleeps 14 to 15 hours per day.  (Tr. 51-53)  Plaintiff alleged that he occasionally falls asleep spontaneously, and that his depression causes a "roller coaster" of emotions that impact his social interactions.  (Tr. 54)  As to physical impairments, Plaintiff testified that his foot injury still causes foot and leg pain leading to difficulty standing and walking.  (Tr. 55)  Plaintiff stated that this injury, combined with a moped accident in June of 2013, limits him to walking 50 feet, standing for 25 minutes, and lifting half a gallon of milk.  (Tr. 55-56)

---

[6] Plaintiff does not challenge herein any step two findings, or that he did not meet or equal a listing at step three.

The ALJ discounted Plaintiff's subject allegations for several reasons.  Regarding Plaintiff's narcolepsy, the ALJ found that, upon seeking routine care and treatment in 2013, Plaintiff's condition stabilized and improved.  (Tr. 25)  The ALJ noted that Plaintiff's narcolepsy improved with "conservative treatment of Adderal."  (Id.)  Moreover, the ALJ noted that his RFC accounted for the effects of Plaintiff's narcolepsy by limiting Plaintiff to work that avoids hazards, climbing, driving, and work that requires no more than simple and routine tasks.  (Id.)  Regarding Plaintiff's back and foot pain, the ALJ noted that the objective medical evidence, and the conservative nature of treatment received, indicated that Plaintiff's back and foot issues were not as severe as Plaintiff claimed.  (Tr. 25-26)  The ALJ accounted for the limitations associated with Plaintiff's back and foot pain in the RFC which limited Plaintiff to, among other things, medium work.  Finally, as to Plaintiff's depression, again, the ALJ noted that, after Plaintiff's one hospital stay, his depression was controlled and stable with conservative and routine treatment.  (Tr. 26)  Nonetheless, the ALJ accounted for the limitations associated with Plaintiff's depression by limiting him to simple and routine work, with limited interaction with others.  (Id.)

The ALJ also discounted Plaintiff's credibility due to several general factors.  The ALJ noted that Plaintiff had a poor work history.  (Tr. 27)  Similarly, the ALJ found "a strong element of secondary gain to [Plaintiff's] claim."  (Id.)  Finally, the ALJ found that Plaintiff's infrequent and conservative treatment history was inconsistent with someone who is totally disabled.  (Id.)

Regarding the medical opinion evidence relevant to the issues raised herein, the ALJ gave "little weight" to the opinions of Dr. Gary Rucker, D.O. (consultative examiner), Dr. Radhika Rao, M.D. (treating psychiatrist), and Dr. Karen MacDonald, Psy.D. (consultative psychologist).

Dr. Rucker opined that Plaintiff could stand for only 15 minutes at a time, and walk 50 yards. (Tr. 272) Dr. Rucker also reported that Plaintiff "would have a problem with bending, stooping, and lifting from the floor." (Id.) The ALJ discounted Dr. Rucker's opinions, finding them internally inconsistent, inconsistent with Plaintiff's treatment history, and inconsistent with other medical evidence in the record. (Tr. 27) The ALJ also noted that Dr. Rucker's opinions relate to a time period fairly early in Plaintiff's alleged period of disability. (Tr. 27-28)

Dr. Radhika Rao, M.D., Plaintiff's treating psychiatrist, rendered an opinion dated April 29, 2014. (Tr. 508-510) Dr. Rao opined that Plaintiff "cannot perform any work." Dr. Rao completed a checklist indicating that Plaintiff would have significant limitations in making "adjustments" in the "occupational," "performance," and "personal-social" contexts. (Tr. 509-10) The ALJ discounted Dr. Rao's opinions, finding that the asserted mental limitations were not consistent with Dr. Rao's own treatment records and the conservative nature of Plaintiff's treatment. (Tr. 28)

Dr. Karen MacDonald, Psy.D., evaluated Plaintiff in January of 2013, and made several findings. (Tr. 517-20) Dr. MacDonald is the provider who originally diagnosed Plaintiff with Major Depressive Disorder. Dr. MacDonald concluded that Plaintiff's depression limited his intellectual abilities, and she found that Plaintiff's combined impairments rendered him qualified for "medical assistance" under Missouri Medicaid rules. (Tr. 520) The ALJ discounted Dr. MacDonald's opinion for three reasons. First, Dr. MacDonald never treated Plaintiff. (Tr. 28) Second, Dr. MacDonald's disability determination was rendered pursuant to a different set of regulations. Third, Dr. MacDonald's own opinion was inconsistent with her own findings. (Id.)

The ALJ determined Plaintiff's RFC on the basis of the medical evidence, Plaintiff's testimony, and the opinion evidence discussed above. After determining Plaintiff's RFC, at step

four the ALJ concluded that Plaintiff was "unable to perform any past relevant work," (Tr. 28),

because the demands of his past work "exceed his residual functional capacity." (Tr. 29) Based

on the testimony of an independent Vocation Expert ("VE"), at step five the ALJ found that

Plaintiff could find employment as a hand packager, dishwasher, or vehicle cleaner.[7] (Tr. 29)

Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. 30)

## V.    Discussion

As grounds for reversal, Plaintiff argues that the ALJ erred in his assessment of the

various medical opinions offered in this case. Plaintiff also disputes the ALJ's credibility

finding. As discussed in detail below, the Court finds that the ALJ did not err in this matter. The

ALJ properly considered the relevant medical opinion evidence and gave good reasons for

discounting Plaintiff's credibility. The ALJ's decision is supported by substantial evidence on

the record as a whole and will be affirmed.

### A.    The Medical Opinion Evidence

The rules regarding treatment of medical opinion evidence vary depending on the nature

of the doctor-patient relationship. For example, the opinion of a treating physician is usually

entitled to "controlling weight" if the opinion "is supported by medically acceptable techniques

and is not inconsistent with substantial evidence in the record." Julin v. Colvin, 826 F.3d 1082,

1088 (8th Cir. 2016). On the other hand, a treating source's opinion "may have limited weight if

it provides conclusory statements only, or is inconsistent with the record," and the ALJ "may

discount or even disregard the opinion where other medical assessments are supported by better

or more thorough medical evidence, or where a treating physician renders inconsistent opinions

that undermine the credibility of such opinions." Papesh v. Colvin, 786 F.3d 1126, 1132 (8th

---

[7] The VE rendered this opinion in response to a hypothetical question from the ALJ which described functional limitations consistent with the ALJ's RFC. (Tr. 66-67)

Cir. 2015). The rules for weighing medical evidence that is not entitled to controlling weight are found at 20 C.F.R. § 404.1527(c), and include: (1) whether the medical source has examined the patient upon whom they are opining; (2) the length of any treating relationship, frequency of examination, and extent of the treating relationship; (3) whether the opinion is supported by the objective medical evidence; (4) consistency with the record as a whole; and (5) whether the doctor is a specialist. § 404.1527(c)(1)-(5). Whatever weight the ALJ assigns, "the ALJ must give good reasons" for that weight. Holmstrom v. Massanari, 270 F.3d 715, 720 (8th Cir. 2001).

### 1. Dr. Rao's Opinion

Plaintiff first argues that the ALJ gave too little weight to Dr. Rao's opinions. As outlined above, Dr. Rao was Plaintiff's treating psychiatrist. Dr. Rao opined that Plaintiff "cannot perform any work," (Tr. 509), and completed a checklist indicating that Plaintiff would have significant limitations in making "adjustments" in the "occupational," "performance," and "personal-social" contexts. (Tr. 510) The ALJ discounted Dr. Rao's opinion, finding that it "stands alone" in its assertion of limitations that were not mentioned in Dr. Rao's own treatment records, nor supported by objective testing or reasoning. (Tr. 28)

Plaintiff argues that the ALJ erred for several reasons. First, Plaintiff argues that the ALJ failed to recognize that Dr. Rao was a treating psychiatrist (instead, the ALJ referred to Dr. Rao as a treating *physician*). Plaintiff suggests that the ALJ did not accord sufficient deference to Dr. Rao's opinion as a psychiatrist because specialists are entitled to additional deference concerning matters within their specialty. Second, Plaintiff argues that Dr. Rao's opinion evidence is supported by objective medical records and treatment notes. Third, Plaintiff argues that the ALJ improperly downplayed the multiple Global Assessment of Functioning ("GAF") scores that Dr. Rao assigned, which, Plaintiff argues, were indicative of serious problems. Last, Plaintiff argues

that, even if Dr. Rao's opinion was not entitled to "controlling" weight, the ALJ still failed to analyze the opinion according to the factors laid out in 20 C.F.R. § 404.1527(d).

Defendant, on the other hand, contends that Dr. Rao's opinion was properly discounted, because it was inconsistent with Dr. Rao's own treatment notes and other evidence in the record, and because there were no objective medical findings supporting the level of limitations Dr. Rao proffered. Defendant also argues that Plaintiff's conservative treatment history betrayed allegations of disabling limitations, and that the ALJ's failure to specify that Dr. Rao was a treating psychiatrist, as opposed to merely a treating physician was, at most, harmless error. (ECF No. 24-1 at 10)

In this case, the ALJ properly discounted Dr. Rao's opinion evidence. Substantial evidence supports the ALJ's conclusion that several of Dr. Rao's contentions were inconsistent with Dr. Rao's own treatment notes. For example, Dr. Rao claimed that Plaintiff had "poor or no[]" ability to be attentive or to concentrate, (Tr. 510), yet Dr. Rao's treatment records consistently show that Plaintiff had normal concentration and attention. (See, e.g., Tr. 378, 383) (noting that Plaintiff's attention and concentration are within normal limits). Similarly, Dr. Rao opined that Plaintiff had no ability to understand, remember and carry out either: (1) complex job instructions; (2) detailed, but not complex job instructions; or even (3) simple job instructions. (Tr. 510) Yet Dr. Rao's treatment notes consistently indicate that Plaintiff had an adequate fund of knowledge, intact abstract reasoning, thought associations within normal limits, and normal thought content. (Tr. 383-84, 388-89)[8] Finally, as Defendant points out, there are no objective findings in Dr. Rao's treatment notes to support an opinion that Plaintiff had fair or poor ability to interact with supervisors, function independently, deal with work stress, follow

---

[8] Also, Dr. Rao's conclusion in this regard is contradicted by Dr. MacDonald's opinion. Dr. MacDonald thought Plaintiff capable of following at least simple instructions. (Tr. 518)

work rules, or relate to coworkers. Therefore, the ALJ was justified in discounting Dr. Rao's opinions. See Davidson v. Astrue, 578 F.3d 838, 842 (8th Cir. 2009)(explaining that "[i]t is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes").

The ALJ also considered the conservative nature of Plaintiff's treatment. Plaintiff's treatment with Dr. Rao consisted of only five 15-minute appointments to manage his medications, and these appointments decreased in frequency over time, with some significant gaps in office visits. Furthermore, Dr. Rao apparently never recommended Plaintiff undergo therapy or counseling. (ECF No. 24-1 at 8) (citing Tr. 376-77, 382, 384, 387, 389, 392) Based on the record, an ALJ could reasonably conclude that Dr. Rao's treatment was not the type of intensive treatment that is consistent with the type of disabling limitations Dr. Rao suggested. Such conservative treatment is a proper ground upon which to discount a physician's opinion. See Perkins v. Astrue, 648 F.3d 892, 898-99 (8th Cir. 2011) (holding that an ALJ properly discounted a treating physician's opinion where, among other flaws, the treating physician's opinion was inconsistent with the conservative nature of the treatment rendered).

Contrary to Plaintiff's arguments, an ALJ can discount a claimant's GAF scores. In fact, the Eighth Circuit recently explained that "GAF scores have limited importance" because they have "no direct correlation to the severity of the mental disorder listings." Nowling v. Colvin, 813 F.3d 1110, 1115-16 n. 3 (8th Cir. 2016). More importantly to this case, Plaintiff's worst GAF scores—ranging from 25-50 which would normally reflect serious mental impairments— were taken before Plaintiff began mental health treatment with Dr. Rao in June of 2013; Plaintiff experienced general improvement with that treatment. (See, e.g., 378, 383-84, 392-94) By April of 2014, Plaintiff reported that he was "steady and stable." (Tr. 392) Given the timing of the

GAF scores and their inconsistency with other, later evidence in the record, as well as the limited value of such scores, the Court finds that the ALJ did not err in discounting Plaintiff's scores. See Wright v. Colvin, 789 F.3d 847, 855 (8th Cir. 2015) (finding that "substantial evidence support[ed] the ALJ's decision not to give weight to [claimant's] GAF score because GAF scores have no direct correlation to the severity standard used by the Commissioner") (citing 65 Fed.Reg. 50746, 50764-65); Halverson v. Astrue, 600 F.3d 922, 931 (8th Cir. 2010).

The ALJ would also be justified in discounting Dr. Rao's opinion evidence to the extent it was conclusory, in checklist form, and it failed to cite objective evidence in support thereof. See Toland v. Colvin, 761 F.3d 931, 937 (8th Cir. 2014) (holding that an ALJ may discount a conclusory medical opinion). Further, the ALJ did not need to credit Dr. Rao's opinion that "Patient cannot perform any work," to the extent that opinion addressed an issue reserved to the Commissioner. See Miller v. Colvin, 784 F.3d 472, 479 (8th Cir. 2015) (noting that the ultimate disability determination is reserved to the ALJ). For all of these reasons, substantial evidence supports the ALJ's decision to discount Dr. Rao's opinion.

As to Plaintiff's contention that this case should be remanded because the ALJ referred to Dr. Rao as a "treating physician" instead of a "treating psychiatrist," the undersigned finds that any error, if there was indeed error, was harmless. It is more likely, however, that the ALJ made, at most, a simple typographical mistake because both the hearing testimony and Dr. Rao's treatment records clearly indicate that the ALJ knew that Dr. Rao was a psychiatrist.

Giving Plaintiff the benefit of the doubt and assuming there was error, any such error was harmless because it is clear that the ALJ would have discounted Dr. Rao's opinion even if it were due more deference because of Dr. Rao's psychiatric specialty. The undersigned reaches this conclusion in view of the many reasons the ALJ gave for discounting Dr. Rao, including that the

opinion was: (1) inconsistent with Dr. Rao's own treatment notes; (2) unsupported by objective evidence in the treatment notes and the medical record; (3) inconsistent with the conservative treatment that Dr. Rao provided; (4) conclusory and in checklist form, without citation of medical evidence; and (5) on an issue ultimately reserved to the Commissioner. The Court is convinced that all of these grounds for discounting Dr. Rao's opinion would have led the ALJ to discount Dr. Rao's opinion, even assuming that the ALJ should have accorded slightly more weight to Dr. Rao as a medical specialist. Because any error in this regard is harmless, remand is not necessary.

## 2. **Dr. Rucker's Opinion**

Plaintiff next argues that the ALJ erred in his treatment of Dr. Rucker's opinion. As noted above, Dr. Rucker provided a consultative examination of Plaintiff and opined that Plaintiff could stand for only 15 minutes at a time and walk for only 50 yards. (Tr. 272) Dr. Rucker also opined that Plaintiff would have issues "bending, stooping, and lifting from the floor," as well as "major problem[s]" with getting up for work and staying awake due to narcolepsy. (Id.) Plaintiff makes several arguments in support of his contention that the ALJ erred in evaluating this opinion evidence.

First, Plaintiff argues that Dr. Rucker's conclusions concerning standing, walking, and lifting requirements were supported by objective medical evidence, and therefore, it was improper to discount them. Second, Plaintiff argues that the ALJ failed to address the "majority" of Dr. Rucker's findings. Next, Plaintiff disputes the ALJ's finding that Dr. Rucker's opinion was inconsistent with Plaintiff's treatment history, arguing that the ALJ did not reference "any specific inconsistency." Lastly, Plaintiff takes issue with the ALJ discounting Dr. Rucker's opinion based upon its timing—Plaintiff argues that there was nothing to indicate that Plaintiff's

condition would improve, so the fact that the opinion occurred early in the disability period was irrelevant. Defendant argues that Dr. Rucker's opinion was properly discounted.

The undersigned finds that substantial evidence supports the ALJ's treatment of Dr. Rucker's opinions. First, the ALJ correctly noted that Dr. Rucker's opinion was arguably inconsistent with his own findings. For example, in his physical examination, Dr. Rucker found that Plaintiff's "[g]ait is normal without assistive device. This patient is able to walk on toes and heels." (Tr. 268) Yet, Dr. Rucker then says that Plaintiff has an "[e]xtreme limp," and can only walk for 50 yards." (Tr. 272) Inconsistency between a doctor's treatment notes and his or her opinion evidence is a proper ground upon which to discount that doctor's opinion. Davidson, 578 F.3d at 842.

Furthermore, and perhaps more significantly, Dr. Rucker's findings were also inconsistent with objective imaging performed a month and a half later. Imaging of Plaintiff's back revealed "normal alignment of the vertebral bodies," and "no fracture or subluxation," but instead only "mild degenerative disc disease," and some "mild disc space narrowing and spur formation." (Tr. 278) Imaging of Plaintiff's ankle showed "no evidence for acute fracture or dislocation." (Id.) Such inconsistencies between with the objective medical evidence provide a valid reason to discount a medical opinion. See Cline v. Colvin, 771 F.3d 1098, 1103 (8th Cir. 2014) (discounting a medical opinion where it is inconsistent with medical evidence).

Also, Dr. Rucker's opinions can reasonably be read to suggest that he was, at least in part, relying on Plaintiff's own subjective statements in order to form his opinion. (See Tr. 272, opining that "if subjective info is true," Plaintiff's narcolepsy would cause "major problem[s]" with getting up for work, and staying awake); (see also Tr. 266, noting that the source for Dr. Rucker's information is Plaintiff himself) As discussed below, Plaintiff's credibility was

properly discounted, so the ALJ properly discounted Dr. Rucker's opinion to the extent that it relied on Plaintiff's subjective allegations.

Regarding the timing of Dr. Rucker's opinion, the ALJ's conclusion that the opinion was, in effect, premature is supported by substantial evidence. Dr. Rucker's regarding Plaintiff's narcolepsy allegations occurred before Plaintiff received effective treatment. As mentioned earlier, Plaintiff's narcolepsy began to improve in March 2013, after he began routine treatment and Adderall. Dr. Rucker's evaluation of Plaintiff, meanwhile, took place in November of 2012. The opinion's relevance to the narcolepsy issue, therefore, is clearly attenuated.

Finally, Plaintiff was receiving only conservative treatment for physical injuries that were supposedly disabling. For example, Plaintiff did not seek regular treatment for his foot pain after Dr. Rucker's opinion, and as the ALJ noted, Plaintiff sometimes went months at a time without seeking treatment for his musculoskeletal issues. (Tr. 26) (noting no such treatment between August, 2013 and February, 2014). This is another valid reason to discount Dr. Rucker's opinion. Perkins, 648 F.3d at 898-99.[9] Dr. Rucker's opinion was therefore properly discounted.

### 3. Dr. MacDonald's Opinion

Plaintiff also argues that the ALJ erred in discounting Dr. MacDonald's opinion. Dr. MacDonald diagnosed Plaintiff with depression. Dr. MacDonald opined that depression limited Plaintiff's mental abilities, and found that Plaintiff qualified for "medical assistance" under Medicaid. (Tr. 520) First, Plaintiff argues the ALJ improperly discounted Dr. MacDonald because Dr. MacDonald was not a treating source. Next, Plaintiff alleges the ALJ did not use the factors listed at 20 C.F.R. § 404.1527(c) to evaluate Dr. MacDonald's opinion. Third, Plaintiff

---

[9] Plaintiff's argument in response that the ALJ failed to consider that the conservative treatment was due to Plaintiff's inability to afford treatment is unavailing. Although it is true that Plaintiff did not have medical insurance for a period, he obtained Medicaid by late 2012 (Tr. 39, 48) and yet still underwent the same conservative treatment.

contests the ALJ's decision to discount Dr. MacDonald's decision because it was reached under Medicaid rules, not Social Security rules. Finally, Plaintiff disputes the ALJ's contention that Dr. MacDonald's "opinion is contrary to her own findings." Defendant argues that the ALJ properly discounted Dr. MacDonald's opinion.

Substantial evidence supports the ALJ's treatment of Dr. MacDonald's opinion. First, it was not error for the ALJ to acknowledge that Dr. MacDonald did not treat Plaintiff, and therefore give correspondingly less weight to that opinion. Indeed, that is a factor that ALJ's are supposed to take into account in assigning weight to a medical opinion under § 404.1527(c), and this also undercuts Plaintiff's arguments that the ALJ failed to consider the § 404.1527(c) factors.

Further, the fact that Plaintiff was entitled to Medicaid is not dispositive of his disability status under Social Security. The ALJ could take into account the fact that Dr. MacDonald's findings were made under a "different set of rules and regulations," which did not bind the Commissioner. See Pelkey v. Barnhart, 433 F.3d 575, 579 (8th Cir. 2006) ("[T]he ALJ is not bound by the disability rating of another agency when he is evaluating whether the claimant is disabled for purposes of social security benefits.").

Substantial evidence in the record also supports the ALJ's conclusion that Dr. MacDonald's conclusion that Plaintiff cannot work was inconsistent with her own mental-status examination of Plaintiff. For example, Dr. MacDonald's mental-status exam revealed: (1) Plaintiff exhibited generally normal behavior; (2) he was in the average range for intelligence; (3) he had the ability to recall and follow simple instructions; (4) he was neat and clean in appearance; (5) he had adequate eye contact; was cooperative; and (6) he had no difficulty relating to Dr. MacDonald. (Tr. 518) These findings are at least arguably inconsistent with Dr.

MacDonald's opinion that Plaintiff was completely disabled.  See Davidson, 578 F.3d at 842

(holding that inconsistency between a doctor's own treatment notes and his subsequent medical

opinion is a proper ground upon which to discount that doctor's opinion).

Finally, the objective medical evidence cited in support of the ALJ's decision to discount

the opinions of Drs. Rao and Rucker is also applicable here.  (See, e.g., Tr. 25, discussing and

citing objective medical evidence that does not support disabling limitations caused by Plaintiff's

narcolepsy); (Tr. 25-26, discussing objective medical evidence, including diagnostic testing, that

fails to support Plaintiff's allegations of musculoskeletal disability); and (Tr. 26, discussing the

objective medical evidence regarding Plaintiff's depression, and noting that it does not support

the level of disability claimed by Plaintiff).  Because Dr. MacDonald's opinion was not

consistent with the cited objective medical evidence, the ALJ permissibly discounted the

opinion.

Plaintiff's argument that Dr. MacDonald's opinion is supportable due to consistency with

Dr. Rao's opinion is not persuasive.  As discussed above, the ALJ properly discounted each

opinion.  The fact that Dr. Rao's opinion is consistent with Dr. MacDonald's opinion does not

necessitate a conclusion that Dr. MacDonald's opinion is entitled to greater weight.  Moreover,

as a factual matter Dr. Rao's opinion and Dr. MacDonald's opinion are not entirely consistent.

Rather, their respective opinions differ in significant and material respects.  Whereas Dr. Rao

thought Plaintiff had no ability to follow even simple instructions, and had severe cognitive

impairments, Dr. MacDonald opined that Plaintiff's intellectual functioning was "in the average

range," and his ability to complete complex math problems was "intact."  Attention was

"somewhat impaired," but he maintained an "ability to recall follow simple instructions."  (Tr.

518)  Thus, the ALJ did not err in failing to consider the consistencies between these opinions.

For all of these reasons, the ALJ properly discounted Dr. MacDonald's opinion.

**B.     Plaintiff's Credibility**

Plaintiff also argues that the ALJ improperly discounted his credibility.  In particular, Plaintiff argues that the ALJ gave "few reasons" for discounting his credibility.  (ECF No. 19 at 14)  Plaintiff also accuses the ALJ of using "boilerplate language" in his analysis, and placing too much emphasis on Plaintiff's activities of daily living.  (Id.)  Defendant responds by arguing that the ALJ gave sufficient and proper reasons for discounting Plaintiff's credibility.

Credibility determinations are "the province of the ALJ, and as long as 'good reasons and substantial evidence' support the ALJ's evaluation of credibility," this Court will defer to that decision.  Julin, 826 F.3d at 1086 (quoting Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005)).  An ALJ "may decline to credit a claimant's subjective complaints 'if the evidence as a whole is inconsistent with the claimant's testimony.'"  Julin, 826 F.3d at 1086 (quoting Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006)).  In evaluating Plaintiff's credibility regarding the extent of his symptoms, an ALJ must consider all of the evidence, including objective medical evidence, and evidence relating to the factors enumerated in Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984), including:  (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of Plaintiff's pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) Plaintiff's functional restrictions.  See Julin, 826 F.3d at 1086; see also 20 C.F.R. § 416.929(c).  The ALJ, however, need not specifically cite Polaski, or specifically discuss each Polaski factor.  See Goff v. Barnhart, 421 F.3d 785, 791 (8th Cir. 2005); Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004).

In this case, the ALJ gave good reasons and substantial evidence supports the ALJ's credibility findings.  As an initial matter, Plaintiff mischaracterizes the ALJ's credibility analysis

as a "conclusory statement." Plaintiff points to language from the ALJ's decision holding that "the credibility of [Plaintiff's] allegations is weakened by evidence of diverse daily activities, significant work activity, and inconsistencies between [Plaintiff's] allegations and the medical records for the relevant period." (ECF No. 19 at 14) (quoting Tr. 28) Plaintiff calls this "boilerplate language." Plaintiff's argument in this regard ignores the entirety of the ALJ's credibility analysis.

Contrary to Plaintiff's argument, the ALJ did not simply make a conclusory credibility finding at the end of his analysis. Rather, the ALJ dedicated several pages of his decision to his credibility analysis, and cited several pieces of relevant evidence to support his conclusions. (Tr. 25-28) The ALJ methodically considered the relevant medical evidence concerning Plaintiff's severe impairments—narcolepsy, foot and back pain, and depression. (Tr. 25-26) Regarding each impairment, the ALJ noted objective medical evidence that detracted from Plaintiff's subjective allegations. A lack of objective medical evidence to support assertions of disabling pain is a proper ground upon which to discount a plaintiff's credibility. See Ramirez v. Barnhart, 292 F.3d 576, 584 (8th Cir. 2002); see also 20 C.F.R. § 404.1529 ("Objective medical evidence [] is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work."). The medical evidence here provides substantial evidence supporting the ALJ's decision to discount Plaintiff's credibility.

The ALJ also relied on Plaintiff's daily activities in discounting Plaintiff's credibility. The ALJ noted that Plaintiff had "no appreciable difficulties with personal care activities," and "helped with food preparation on a daily basis." (Tr. 27, citing Tr. 223-24) Plaintiff took part in major household chores, such as cooking, doing dishes, dusting, and laundry. Also, Plaintiff

went outside on a daily basis, shopped for groceries, and enjoyed "coffee talk" with friends.  (Tr. 27; 224-26)  These types of activities, while perhaps not in and of themselves evidence of an ability to work, when combined with the other evidence the ALJ relied on, are inconsistent with allegations of complete disability.  <u>See</u> <u>Clevenger v. Social Sec. Admin.</u>, 567 F.3d 971, 976 (8th Cir. 2009) (agreeing that activities such as doing laundry, washing dishes, changing sheets, ironing, preparing meals, driving, attending church, and visiting friends and relatives supported an ALJ's decision to discount a plaintiff's assertions of disabling pain).

Additionally, the ALJ's conclusion that Plaintiff was receiving less intensive care than would be expected from a disabled individual was appropriate and supported by the record.  As noted above regarding the medical opinion evidence, Plaintiff received only five 15-minute sessions with Dr. Rao for routine medication refill.  Also, the frequency of Plaintiff's sessions with Dr. Rao trailed off toward the beginning of 2014, and Dr. Rao never recommended additional or more intensive treatment.  These are proper grounds upon which to discount Plaintiff's credibility.  <u>See</u> <u>Moore v. Astrue</u>, 572 F.3d 520, 524-25 (8th Cir. 2009) (holding that it is appropriate for an ALJ to consider conservative or minimal treatment in assessing credibility).

Finally, the ALJ considered Plaintiff's poor work history.  As the ALJ noted, Plaintiff has a "very sporadic work history" which calls into question his dedication to seeking work.  This is a proper consideration for the ALJ.  <u>See</u> <u>Wildman v. Astrue</u>, 596 F.3d 959, 968-69 (8th Cir. 2010) (discounting a plaintiff's credibility for, among other reasons, "a sporadic work history before her disability onset date").

In sum, the ALJ gave several legitimate reasons for discounting Plaintiff's credibility. Because the ALJ gave good reasons, that determination is entitled to deference by this Court. Buckner, 646 F.3d at 558.[10]

**VI.    Conclusion**

For all of the foregoing reasons, Plaintiff's arguments are unavailing. The ALJ carefully evaluated the evidence, cogently articulated his reasons for finding Plaintiff not disabled, and gave Plaintiff a full and fair hearing. The ALJ's decision is supported by substantial evidence.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the ALJ in this matter is **AFFIRMED.**

/s/ *John M. Bodenhausen*
UNITED STATES MAGISTRATE JUDGE

Dated this 31st day of January, 2017

---

[10] Defendant argues that Plaintiff makes a third point—the ALJ's RFC is not supported by substantial evidence. After reviewing Plaintiff's brief, the Court does not see such an argument. Plaintiff has only raised arguments relating to opinion evidence and his credibility. Therefore, the undersigned does not have reason to further consider the RFC.